# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALLEN SNYDER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-7071** |
| **DARREL VANNOY, WARDEN** | **SECTION: "B"(1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Allen Snyder, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Although he was originally convicted of first degree murder and sentenced to death, that conviction and sentence were overturned after the United States Supreme Court determined that the prosecution exercised a peremptory challenge based on race in violation of Batson v. Kentucky, 476 U.S. 79 (1986).[1] After the charge against petitioner was reduced to

---

[1] On August 29, 1996, petitioner was convicted of first degree murder. State Rec., Vol. 11 of 20, transcript of August 29, 1996, p. 166. On August 22, 1997, he was sentenced to death based on the jury's recommendation. State Rec., Vol. 12 of 20, transcript of August 22, 1997, p. 26. On April 14, 1999, the Louisiana Supreme Court conditionally affirmed that conviction and sentence but remanded the matter to the district court for a determination of whether a meaningful inquiry into petitioner's competence at the time of trial was possible and, if so, for an evidentiary hearing and determination on that issue. State v. Snyder, 750 So. 2d 832 (La. 1999); State Rec., Vol. 2 of 20. On remand, the district court found that a retrospective determination of petitioner's competence at trial was possible and that he was

second degree murder, he was convicted of that lesser crime[2] and sentenced to a term of life

imprisonment without benefit of probation, parole, or suspension of sentence.[3]

In its opinion on direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the

facts of this case as follows:

> In 1995, Allen Snyder and his then-wife, Mary Beth, had a troubled
> marriage.[FN 11]  According to Mary Beth, however, after the birth of their third
> child, Allen became very controlling and jealous.  He would not allow her to speak
> to other men and prohibited her from leaving the house alone.
>
>> [FN 11]  It is undisputed that both parties had engaged in extramarital
>> relationships in 1994 or 1995.
>
> Eventually, Allen's jealousy escalated to physical abuse.  Mary Beth
> testified that, on March 18, 1995, Allen, using his hand, violently shoved her head
> against the passenger side window of his car, which caused injuries to her face.
> Mary Beth did not seek medical treatment that night.
>
> About three months later, in May of 1995, Allen struck Mary Beth in the
> leg with a baseball bat as she lay sleeping.  She had a large bruise and limped for
> about a week.  Not long after that incident, Allen drove Mary Beth to an isolated
> road, opened the trunk of his car, and threatened her that he could do "whatever he
> wanted to" her and "nobody would ever find" her.
>
> That summer the violence escalated. On the morning of June 11, 1995,
> Allen "slammed" Mary Beth's head into the wall of their children's bedroom,
> which caused injuries requiring hospitalization.[FN 12]  After this instance, which
> their children witnessed, Mary Beth took their children and went to stay at her
> parents' house on Wilker Neal Street in River Ridge.
>
>> [FN 12]  Daniel Kilian, former patrol officer for the Kenner Police Department,
>> testified that, on June 11, 1995, he responded to a call at the Snyder's home at 508
>> Hanson Street in Kenner.  When he arrived, he observed Mary Beth Snyder, who
>> was bleeding from her head and had a scratch on her face.  She reported that Allen
>> had pushed her head into a wall in their children's bedroom.  Defendant was
>> arrested in connection with this incident.  Further, the parties stipulated that the

in fact competent during trial. State Rec., Vol. 3 of 20, Judgment dated October 26, 2000.  On April 14, 2004, the
Louisiana Supreme Court then unconditionally affirmed petitioner's conviction and sentence.  State v. Snyder, 874
So. 2d 739 (La. 2004); State Rec., Vol. 3 of 20.  However, on June 27, 2005, the United States Supreme Court vacated
that judgment and remanded the matter for further consideration of petitioner's Batson claim.  Snyder v. Louisiana,
545 U.S. 1137 (2005); State Rec., Vol. 19 of 20.  On September 6, 2006, the Louisiana Supreme Court again
unconditionally affirmed petitioner's conviction and sentence.  State v. Snyder, 942 So. 2d 484 (La. 2006); State Rec.,
Vol. Vol. 13 of 20.  On March 19, 2008, the United States Supreme Court, finding a Batson violation, then reversed
that judgment and remanded the matter.  Snyder v. Louisiana, 552 U.S. 472 (2008); State Rec., Vol. 19 of 20.  On
April 30, 2008, the Louisiana Supreme Court set aside the conviction and sentence and remanded the matter to the
district court.  State v. Snyder, 982 So. 2d 763 (La. 2008); State Rec., Vol. 13 of 20.
[2] State Rec., Vol. 17 of 20, transcript of February 3, 2012, p. 138.
[3] State Rec., Vol. 17 of 20, transcript of March 1, 2012.

medical records for East Jefferson General Hospital would establish that Mary Beth Snyder was admitted for medical treatment of injuries to her head on June 11, 1995.

On June 18, 1995, Allen tried to speak with Mary Beth, but she refused. Later that night, Allen disconnected the electrical box outside Mary Beth's parents' home, entered the home, and stabbed Mary Beth nine times in the neck, head, and arms. Mrs. Snyder was treated at the hospital for her injuries.[FN 13]

> [FN 13] Sergeant Bonura testified that, on June 18, 1995, he was dispatched to a residence on Wilker Neal in response to an aggravated burglary. Upon arrival, he observed that the victim, Mary Beth Snyder, had sustained a puncture wound to her neck. Sergeant Bonura interviewed witnesses and developed Allen Snyder as a suspect. Further, the parties stipulated that the medical records for East Jefferson General Hospital revealed that Mary Beth Snyder was admitted for treatment of numerous deep puncture wounds on June 18, 1995.

Approximately two months later, on August 15, 1995, Allen called Mary Beth to discuss reconciliation. Mary Beth agreed to meet with him the following day, telling Allen that she had plans with her cousin that night. Allen, however, wanted to begin their reconciliation that night so he paged Mary Beth numerous times while he waited outside of her cousin's house, which is less than a block away from Mary Beth's parents' house.

In truth, Mary Beth went out with another man, Howard Wilson. Around 1:30 a.m., Howard Wilson drove Mary Beth back to her parents' house. Allen, who admitted that he was carrying a nine-inch-long knife to "scare" Mary Beth into talking to him, was hiding next to a nearby house and waiting for Mary Beth to return.

Not long after Howard Wilson stopped his car in front of Mary Beth's parents' house, Allen yanked open the driver's side door, leaned over Howard Wilson, and stabbed Mary Beth in the face, which, according to Allen "slowed her down." Allen then "tussled" with Howard, who "got stabbed" because he floored the car's accelerator causing Allen to fall onto Howard during the fight. At some point, Howard Wilson exited his car and stumbled down the street. Allen then got into Wilson's car and attempted to drive off with Mary Beth, who fought and pled for her life. Almost immediately, however, Allen crashed the car into a nearby fire hydrant then fled.[FN 14]

> [FN 14] At trial, Allen testified that, when he approached the car, he observed Mary Beth and Howard kissing. He further testified that Howard Wilson "jumped up and that's how the scuffle started." Allen testified that Wilson was armed also. Further, Allen disarmed him then Wilson ran away. Finally, after trying to remove Mary Beth from the car, Allen eventually ran back to his car, and went home.

That night, Gwendolyn Williams was walking home on Wilker Neal Street when she observed a man "stooping down on the side of a trailer" with a knife. She saw the man run from behind the trailer toward a car parked across the street, then open the driver's door, jump inside, and start "tussling" with the driver. When the

driver exited the car, Ms. Williams observed that his "throat was cut." Then, the car moved forward until it hit a fire hydrant.

According to Ms. Williams, she could hear Mary Beth Snyder, who was inside the car, screaming for help while the man, who she recognized as Mary Beth's husband, "started cutting on her." Ms. Williams, who had known Mary Beth for a long time, screamed at the man, who jumped out of the car and fled. Ms. Williams then helped Mary Beth, who was cut "everywhere she could be cut" to her mother's house and waited for the paramedics and the police to arrive.

Deputy Michael Cooke of the Jefferson Parish Sheriff's Office ("JPSO") was on patrol when he was dispatched to a "traffic accident" at 312 Wilker Neal Street. When he arrived at the scene, he noticed that a white car had struck a fire hydrant. There were no passengers inside the vehicle; however, large amounts of blood were present on the ceiling and dashboard. Deputy Cooke then located Howard Wilson and Mary Beth Snyder, who each had sustained wounds that appeared to be from a sharp instrument, such as a knife. After both victims were determined to be free of weapons, they were rushed to the hospital.

According to medical records that were introduced at trial, Howard Wilson died from exsanguination caused by sharp force injuries inflicted with a double-edged blade. Dr. Susan Garcia, an expert forensic pathologist who performed the autopsy on the victim, testified that Howard Wilson sustained nine sharp force injuries to his upper torso. Of those nine, two wounds, which punctured his lung and opened an artery, were lethal. The manner of Mr. Wilson's death was homicide.[FN 15]

> [FN 15] That night, Mary Beth Snyder sustained 19 stab wounds, which required surgical intervention and hospitalization.

Meanwhile, as a result of investigation, Allen Snyder, defendant herein, was developed as a suspect. Approximately 12 hours later, defendant called the police claiming that he "cut some people and that he was considering suicide," and requested that an officer be sent to his house.

Officer Vic Giglio of the Kenner Police Department was dispatched to 508 Hanson Street, in Kenner, in response to the call. Defendant allowed Officer Giglio to enter his house then retreated to another room in the house, where he continued to speak with the dispatcher. Defendant did not have any visible injuries. Almost immediately, Sergeant Giglio realized that defendant was wanted for questioning regarding the homicide on Wilker Neal so he detained defendant for the Jefferson Parish Sheriff's Office.

Detective Debbie Labit of the JPSO arrived at defendant's home and advised him of his Miranda[FN 16] rights. She observed injuries to defendant's right hand, which appeared to be fresh and "indicative of offensive-type of injuries during an altercation where a knife is used." Detective Labit had defendant transported to the Detective's Bureau, where defendant told her that "he had cut them and that he had been beaten up emotionally by his ex – by his wife and that during the cutting, that the male had taken the knife and fled with the knife."[FN 17]

4

[FN 16]  <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[FN 17]  The weapon was never recovered.

Defendant's statement was played for the jury.  In his statement, defendant indicated that he drove to Wilker Neal Street to find his wife and who was with her.  Defendant stated that, when Mary Beth and Howard Wilson drove up, he was going to leave but decided to approach them with a knife.  Defendant indicated that he intended to "scare her and her friend" "to make 'em talk to me."  Defendant stated that he walked up to the white car, opened the driver's side door, and told Howard Wilson "we have to talk."  According to defendant, Howard Wilson then "jumped up" and they started to "scuffle."  Defendant stated that he pushed the victim back into the car, and that both he and the victim were armed with knives.

Defendant stated, "my wife, she got stabbed first" then Howard Wilson got stabbed because he pressed the accelerator, which caused defendant to fall onto Wilson.  Next, Wilson exited the car and ran one way while defendant ran the other way.  Defendant admitted that he threw the knife away as he fled.

On August 16, 1995, Lieutenant Schultz prepared and participated in the execution of a search warrant for defendant's residence and his vehicle.  In defendant's house, deputies recovered a white t-shirt hidden in the attic that tested positive for blood consistent with Howard Wilson's DNA.

Further, at trial, Mary Beth identified defendant, who is now her ex-husband, as the person who stabbed her and Howard Wilson on the night of August 16, 1995.  She also testified that neither she nor Howard Wilson had a weapon of any sort during the altercation in question.  After hearing the testimony and reviewing the evidence, the twelve-person jury unanimously found defendant guilty as charged of second degree murder.[4]

The Court of Appeal then affirmed petitioner's conviction and sentence,[5] and the Louisiana Supreme Court thereafter denied his related writ application,[6] completing the direct-review proceedings in the state courts.

After subsequently seeking post-conviction relief in the state courts without success, petitioner filed the instant federal habeas corpus application on July 24, 2017.[7]  In his application, he claimed that he received ineffective assistance of counsel both at trial and on appeal.  Specifically, he claimed:

---

[4] <u>State v. Snyder</u>, 128 So. 3d 370, 373-75 (La. App. 5th Cir. 2013); State Rec., Vol. 17 of 20.
[5] <u>Id.</u> at 383.
[6] <u>State v. Snyder</u>, 138 So. 3d 643 (La. 2014); State Rec., Vol. 17 of 20.
[7] Rec. Doc. 3.

1.      Trial counsel was ineffective for

(a)      allowing the court to use "other crimes" evidence without argument,

(b)      failing to object to the prosecution's <u>Batson</u> violation in choosing prospective jurors with experiences of domestic abuse,

(c)      failing to impeach Mary Beth Snyder with her testimony from the first trial and failing to show her bias and/or motive for lying,

(d)      allowing Gwendolyn Williams's former testimony to be read into the record during the second trial in violation of petitioner's right to confront his accusers, and

(e)      requesting an oral continuance.

2.      Appellate counsel was ineffective.

All of those claims were first raised by petitioner during the state post-conviction proceedings. However, of those claims, only Claim 1(b) was raised in the state district court. That court denied that claim, holding:

> The state urges this court to find the procedural bar of LSA-C.Cr.P. art. 926(B)(3) bars relief. That article requires that a petitioner include a "statement of the grounds upon which relief is sought, specifying with reasonable particularity the factual basis for such relief." In addition to this provision, at all times the burden of proof in a post-conviction case is on the petitioner. LSA-C.Cr.P. art. 930.2. Petitioner's brief contains a bare conclusion that his trial and appellate attorneys were ineffective in not objecting to jury composition. The court finds this claim procedurally barred by lack of specificity and failing to meet, or even allege, the necessary burden of proof.[8]

Petitioner then raised that same claim, along with additional new claims, in the related writ application he filed with the Louisiana Fifth Circuit Court of Appeal. In denying that writ application, the Court of Appeal held:

---

[8] State Rec., Vol. 14 of 20, Order dated January 7, 2015, p. 2.

In his writ application, for the first time, relator raises and briefs his allegations of ineffective assistance of counsel concerning the State's introduction of evidence of other crimes and bad acts, his right to full confrontation and cross-examination of the State's witnesses, and the injustice he suffered when trial counsel asked for an unnecessary oral continuance. Relator also raises and briefs his argument of ineffective assistance of appellate counsel when she failed to assign as error his motion to quash and writ of habeas corpus on direct appeal. Because appellate courts will only review issues that were submitted to the trial court, we decline to review relator's new ineffective assistance of counsel claims. See U.R.C.A. Rule 1-3.

To the extent that relator's writ application seeks to challenge the denial of the one claim of ineffective assistance of counsel originally set forth in his application for post-conviction relief, we find that the district court did not err in denying this claim on procedural grounds. In his application for post-conviction relief, relator raised as claim 3 that his trial attorneys were ineffective when they failed to recognize and object to the discriminatory practice of selecting the jury pool. In his writ application, relator claims that as a Batson violation, his trial counsel was ineffective for not objecting to the "prosecution's consistent manipulation in choosing prospective jurors." Upon review, we find that the district court did not err in denying this claim of ineffective assistance of counsel, finding that relator failed to meet his burden of proof under La. C.Cr.P. art. 930.2, in that the claim lacked specificity and failed to meet or even allege the necessary burden of proof.[9]

Petitioner then sought further review by the Louisiana Supreme Court. However, that court likewise denied relief, stating simply: "Denied. Relator fails to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Relator's remaining claims are repetitive and/or unsupported. La.C.Cr.P. art. 930.2; La.C.Cr.P. art. 930.4."[10]

**Exhaustion/Procedural Bar**

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted). Moreover, the prisoner's claims must have been presented "in

---

[9] Snyder v. Cain, No. 15-KH-158 (La. App. 5th Cir. May 5, 2015); State Rec., Vol. 14 of 20.
[10] State ex rel. Snyder v. State, 202 So. 3d 481 (La. 2016); State Rec., Vol. 20 of 20.

a procedurally proper manner according to the rules of the state courts." Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988) (quotation marks omitted); see also Carty v. Thaler, 583 F.3d 244, 254 (5th Cir. 2009) ("Fair presentation does not entertain presenting claims for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor.  The purposes of the exhaustion requirement would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it." (citation and quotation marks omitted)).

In its response in this proceeding, the state asserts that "all claims appear to be exhausted."[11]  That concession appears to be based on the fact that all of the claims were asserted to the Louisiana Supreme Court.  If so, then the concession is based on a common misunderstanding of the exhaustion requirement.  "Attorneys who represent the State often mistakenly assume that because a case has progressed to the Supreme Court of Louisiana, claims have been exhausted.  Claims are not exhausted, however, unless they are properly presented in the Petitioner's briefs *at each level of the state court system*, either on appeal or post-conviction." Wilson v. Warden, Riverbend Detention Center, Civ. Action No. 11-cv-0355, 2014 WL 1315557, at *3 (W.D. La. Mar. 31, 2014) (emphasis added); see also Baldwin, 541 U.S. at 29 (holding that to comply with the exhaustion requirement, "the prisoner must fairly present his claim in *each appropriate state court* (including a state supreme court with powers of discretionary review) ..." (emphasis added; quotation marks omitted)).  Here, as noted, the Louisiana Fifth Circuit Court of Appeal held petitioner had asserted all but one of his ineffective assistance of counsel claims for

---

[11] Rec. Doc. 11, p. 19.

the first time to that court, *thereby bypassing the state district court*.[12]  Because those new claims were not asserted *at each level of the state court system*, they are unexhausted.

Further, it is clear that a federal habeas claim is also procedurally defaulted if the "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted).  Here, there is little doubt the state courts would deny any new attempt by petitioner to assert his unexhausted claims as procedurally barred, because any new application would now be both repetitive and untimely under articles 930.4 and 930.8 of the Louisiana Code of Criminal Procedure.  That said, the state does not argue that the claims are procedurally barred *on that basis*, and the Court is not obliged to raise such a defense on the state's behalf.  See Trest v. Cain, 522 U.S. 87 (1977); Prieto v. Quarterman, 456 F.3d 511, 518 (5th Cir. 2006); Magouirk v. Phillips, 144 F.3d 348, 359-60 (5th Cir. 1998).

The state does, however, argue that petitioner's claims are procedurally barred on *other* bases.  The state notes that the Court of Appeal denied Claim 1(b) based on article 926(B)(3) of Louisiana Code of Criminal Procedure, which provides:  "The petition [for post-conviction relief] shall allege … [a] statement of the grounds upon which relief is sought, specifying with reasonable particularity the factual basis for such relief …."  The state further notes that petitioner's remaining claims were denied by the Court of Appeal because they were improperly asserted in violation of Rule 1-3 of the Uniform Rules of the Louisiana Courts of Appeal, which provides in pertinent part:  "The Courts of Appeal will review only issues which were submitted to the trial court …."  The state then opines that it is presumed that the Louisiana Supreme Court adopted those same rulings.

---

[12] Snyder v. Cain, No. 15-KH-158 (La. App. 5th Cir. May 5, 2015); State Rec., Vol. 14 of 20.

However, it is far from clear that such a presumption is appropriate in the instant case.  As noted, the Louisiana Supreme Court's cryptic judgment appears to indicate that it denied one or more unspecified claims on the merits and then denied the "remaining claims" (which were also unspecified) based on articles 930.2 "and/or" 930.4 of the Louisiana Code of Criminal Procedure.  Because the Louisiana Supreme Court's ruling is so vague and is at least arguably inconsistent with the Court of Appeal's opinion and its bases for denial, this Court cannot definitively determine on which basis or bases each of petitioner's individual claims were denied by the Louisiana Supreme Court.

In the face of such uncertainty, and in an abundance of caution, the undersigned recommends that, because petitioner's claims clearly fail on the merits in any event, they simply be denied on that basis rather than on procedural grounds.[13]

**Petitioner's Claims**

As noted, petitioner claims that he received ineffective assistance of counsel both at trial and on appeal.  The clearly established federal law concerning ineffective assistance of counsel claims is founded on the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984).  In that case, the Supreme Court established a two-prong test for evaluating

---

[13] A federal habeas court need not determine whether claims are in fact procedurally barred when the claims clearly fail on the merits.  See Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at *1 n.5 (E.D. La. July 30, 2008).  A federal court additionally has the authority to deny a habeas claim on the merits regardless of whether the petitioner exhausted his state court remedies with respect to that claim and whether exhaustion is waived by the state. 28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Lande v. Cooper, Civ. Action No. 11-3130, 2013 WL 5781691, at *26 n.68 (E.D. La. Oct. 25, 2013); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).

Additionally, the Court notes that a federal habeas court is to apply a deferential standard of the review with respect to claims adjudicated on the merits by the state courts.  See 28 U.S.C. § 2254(d).  However, because this Court cannot ascertain which claims were adjudicated on the merits in the instant case, and because the claims fail even when considered under a more stringent de novo standard of review, the Court will simply apply the de novo standard.  See Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) ("Courts can … deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review, see § 2254(a).").

ineffective assistance of counsel claims.  Specifically, a petitioner seeking relief on such a claim is required to show both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland, 466 U.S. at 697.  The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Matthesen v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel.  In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.  On the other hand, to prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  Briseno, 274 F.3d at 210.

Petitioner first contends that his trial counsel was ineffective for allowing the state to use "other crimes" evidence against him without argument and "for not briefing the trial court on how the State could not use mere allegations that were never proven against him."[14]  That claim is wholly unsupported by the record, which shows that counsel in fact vigorously litigated this issue.

For example, at a hearing held on May 10, 2010, petitioner's trial counsel argued that the "other crimes" evidence was inadmissible.[15]  At that time he argued that the evidence was hearsay and that the prior bad acts were unadjudicated.  He further argued that the acts were irrelevant because they were not acts against Wilson, the actual victim in the case.  After the hearing, defense counsel also filed an extensive memorandum further explaining his arguments as to why the "other

---

[14] Rec. Doc. 3, pp. 6 and 30.
[15] State Rec., Vol. 15 of 20, transcript of May 10, 2010.

crimes" evidence was inadmissible.[16]    Among his various arguments, counsel argued that petitioner had not been prosecuted for any of the alleged incidents against Mary Beth Snyder and that the state had failed to show by clear and convincing evidence that the acts occurred and that they were committed by petitioner.[17]  After the court found the evidence admissible, trial counsel then sought writs from the Louisiana Fifth Circuit Court of Appeal[18] and the Louisiana Supreme Court.[19]  The mere fact that counsel's vigorous efforts were ultimately unsuccessful is not evidence that his performance was constitutionally deficient.  See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004).  Because no deficient performance has been shown with respect to this claim, the claim necessarily fails.

Petitioner next contends that his trial counsel was "ineffective for not objecting to the State's consistent manipulation in choosing prospective jurors in this case.   The State systematically chose women with past experiences of domestic abuse."[20]  He further claims that the prosecution deliberately manipulated the jury pool by winnowing out "almost everyone not female and/or not biased on the issue of domestic violence."[21]

In Batson v. Kentucky, 476 U.S. 79 (1986), the Supreme Court held that purposeful racial discrimination in the use of peremptory strikes of prospective jurors violates the Equal Protection Clause.  In J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127 (1994), the Supreme Court extended that prohibition to include gender discrimination.  In evaluating whether a petitioner has established a violation, a three-step analysis is employed, with the first step requiring that a petitioner make a

---

[16] State Rec., Vol. 13 of 20, Objection to State's Notice of Intent to Use Evidence of Other Crimes filed May 19, 2010.
[17] Id.
[18] See State v. Snyder, No. 10-K-628 (La. App. 5th Cir. Aug. 20, 2010); State Rec., Vol. 20 of 20.
[19] See State v. Snyder, 49 So. 3d 391 (La. 2010); State Rec., Vol. 20 of 20.
[20] Rec. Doc. 3, at pp. 6 and 34.
[21] Id. at pp. 34-35.

prima facie showing that a peremptory challenge has been exercised on the basis of gender. Stevens v. Epps, 618 F.3d 489, 492 (5th Cir. 2010).

The relevant circumstances of the jury selection in this case simply do not allow for the conclusion that a prima facie case of gender discrimination can be made. The record provides no evidence or any indication that peremptory challenges were used to discriminate against males. The record reflects that the final jury proper consisted of nine females and three males, along with two females chosen as alternate jurors.[22] After the venire members were randomly drawn, 39 persons were questioned prior to the final jury selection.[23] Of the 15 males examined, six were stricken for cause, leaving only nine on the venire.[24] The State used only three peremptory challenges consisting of one strike on a male and two strikes on females.[25] Given the facts of this particular case and this particular jury panel, the State's use of one of its strikes on a male is neither surprising nor inherently suspect. Where, as here, a petitioner has failed to present any evidence showing that there was in fact a basis for a Batson challenge, he cannot meet his burden to prove that counsel was ineffective for failing to make such a challenge. See, e.g., Dennis v. Vannoy, Civ. Action No. 16-6889, 2017 WL 9855222, at *15 (E.D. La. June 2, 2017), adopted, 2018 WL 3417872 (E.D. La. July 12, 2018); Stogner v. Cain, Civ. Action No. 12-2703, 2013 WL 2444667, at *19 (E.D. La. June 4, 2013); accord Bell v. Director, TDCJ-CID, No. 03-36, 2005 WL 2977771, at *6 (E.D. Tex. Nov. 2, 2005) ("[T]here is nothing in the record to support the Petitioner's allegation that a particular juror was improperly struck. From the record, it is not possible to draw a reasonable inference of purposeful discrimination as required by Batson. Petitioner has provided no proof of his allegation. The Petitioner's claim is a conclusory allegation not supported by the

---

[22] State Rec., Vol. 13 of 20, minute entry dated January 31, 2012.
[23] Id.
[24] Id.
[25] Id.

record.  Conclusory allegations and bald assertions are insufficient to support a petition for a writ of habeas corpus.").  Accordingly, this claim must likewise be rejected.

Petitioner next contends that trial counsel was ineffective in his cross-examination of Mary Beth Snyder.  He claims his trial counsel "had a duty to impeach Mary Beth, and reveal her bias and/or motive for lying to so many people."[26]

It is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 F. App'x 769 (5th Cir. 2005); accord Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), aff'd, 444 F. App'x 835 (5th Cir. 2011); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, 359 F. App'x 462 (5th Cir. 2009); Packnett v. Cain, Civ. Action No. 06-5973, 2008 WL 148486, at *11 (E.D. La. Jan. 10, 2008); Parker v. Cain, 445 F. Supp. 2d 685, 710 (E.D. La. 2006).  Moreover, the United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such tactical matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689.  Additionally, it is irrelevant that another attorney might have made other choices or handled such issues differently.  As the Supreme Court noted:  "There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way." Id.

---

[26] Rec. Doc. 3, p. 6.

Here, petitioner has failed to show that counsel's cross-examination of Mary Beth Snyder was deficient.  First, petitioner does not identify any relevant questions that counsel failed to ask on cross-examination.  Further, while petitioner contends that Mary Beth Snyder's testimony was inconsistent with the testimony she provided at the first trial, the record reflects that defense counsel did in fact question her about the inconsistencies.[27]  Defense counsel used the transcript of her prior testimony to refresh her recollection as well as to impeach her testimony.[28]  After a review of the transcripts in their entirety the Court finds that counsel's cross-examination and attempts to challenge her credibility were not deficient and that petitioner was not prejudiced by counsel's performance.

The court notes that petitioner also seems to fault trial counsel for failing to introduce into evidence letters Mary Beth Snyder wrote to petitioner.  However, on federal habeas corpus review, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  Garland v. Maggio, 717 F.2d 199, 206 (5th Cir. 1983); see also Pape v. Thaler, 645 F.3d 281, 291 (5th Cir. 2011).  "'Failure to present [evidence does] not constitute "deficient" performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'"  Williams v. Cockrell, 31 F. App'x 832, 2002 WL 180359, at *3 (5th Cir. Jan. 4, 2002) (quoting Williams v. Cain, 125 F.3d 269, 278 (5th Cir. 1997)).

In this case, defense counsel questioned the witness about two of the letters.  The trial court, however, limited defense counsel's examination, ordered that the letters could not be admitted into evidence or read to the jury, and allowed the prosecution to review the two letters over the

---

[27] State Rec., Vol. 16 of 20, trial transcript of February 2, 2012, pp. 130-32, 136-37, and 139-40.
[28] Id. at pp. 124-25, 128-29, 130-32, and 139-40.

defense's objection.  Defense counsel then decided to conclude his questioning of the witness because he did not want to risk having to produce additional letters, which the defense believed to be non-discoverable, to the prosecution.[29]  It is clear from defense counsel's statements at trial that he made a tactical decision to conclude his cross-examination of the witness.[30]

Because petitioner cannot establish that his counsel performed deficiently with respect to his cross-examination of Mary Beth Snyder, this claim fails.

Read broadly, petitioner's next contention is that his trial counsel was ineffective for failing to object to Gwendolyn Williams's testimony from the first trial being read into the record at his second trial.  He claims because his attorney at the first trial chose not to cross-examine Williams, then the admission of her testimony at the second trial violated his right to confrontation.

Petitioner's suggestion that his counsel failed to object to the admission into evidence of Williams's prior testimony is simply untrue.  The state filed a notice of intent to use prior statements of an unavailable witness pursuant to La. Code Evid. art. 804 on August 3, 2009.[31]  At a hearing held on August 31, 2009, trial counsel vigorously opposed the state's request to use Williams's prior testimony.[32]  Counsel argued both that the prosecution failed to show that Williams was deceased and therefore unavailable and that the statement should not be admitted because Williams was not cross-examined by petitioner's counsel during the first trial.[33]  The trial court found that the state met its burden of demonstrating that Williams was unavailable and ruled

---

[29] State Rec., Vol. 17 of 20, trial transcript of February 2, 2012, pp. 172-83.
[30] To the extent that petitioner focuses on actions of the state trial court in limiting cross-examination regarding the content of the letters, finding the letters inadmissible, and allowing the prosecution to read the letters, those actions were not the performance of counsel.  In other words, petitioner fails to state a cognizable challenge to *counsel's performance* when he complains of the *trial court's rulings* regarding the letters.
[31] State Rec., Vol. 13 of 20, Notice of Intent to Use Prior Statement of Unavailable Witness Pursuant to C.E. Art. 804 filed August 3, 2009.
[32] State Rec., Vol. 15 of 20, transcript of August 31, 2009.
[33] Id. at pp. 28-29.

that her previous testimony could be submitted at the second trial.[34]    At trial, defense counsel renewed their objections to the testimony and successfully argued against the prosecution's request to publish the transcript of Williams's testimony to the jury.[35]   The testimony was instead read to the jury.[36]   Again, the mere fact that the challenge to the testimony was unsuccessful is not evidence that counsel performed deficiently.  See Martinez, 99 F. App'x at 543.

Petitioner's last claim of ineffective assistance of trial counsel is that his counsel requested an unnecessary oral continuance.[37]   However, "a decision on whether or not to seek a continuance is inherently one of trial strategy and, as such, is generally accorded great deference."  Johnson v. Cain, Civ. Action No. 08-4208, 2009 WL 2366385, at *8 (E.D. La. July 29, 2009); Brooks v. Cain, Civ. Action No. 06-1869, 2009 WL 3088323, at *3 (E.D. La. Sept. 21, 2009) (citing McVean v. United States, 88 F. App'x 847, 849 (6th Cir. 2004)); Moore v. Casperson, 345 F.3d 474, 490 (7th Cir. 2003)).

Here, after petitioner's first conviction was vacated, the Louisiana Supreme Court remanded the case for further proceedings on April 30, 2008.[38]   On December 1, 2008, the trial court appointed counsel from the Louisiana Capital Assistance project to represent petitioner.[39]   On January 23, 2009, the indictment was amended to charge petitioner with the lesser offense of second degree murder, petitioner's counsel withdrew (presumably because petitioner was no longer charged with a capital offense), and a trial was scheduled for February 17, 2009.[40]   However, on February 17, 2009, the same day the trial was set to commence, new counsel enrolled for petitioner and requested a continuance.  That request was granted and a status hearing was

---

[34] Id. at p. 29.
[35] State Rec., Vol. 16 of 20, trial transcript of February 2, 2012, pp. 76-79.
[36] Id. at pp. 82-87.
[37] Rec. Doc. 3, pp. 37-38.
[38] State v. Snyder, 982 So. 2d 763 (La. 2008); State Rec., Vol. 13 of 20.
[39] State Rec., Vol. 13 of 20, minute entry dated December 1, 2008.
[40] State Rec., Vol. 13 of 20, minute entry dated January 23, 2009.

scheduled for April 9, 2009.[41]  While the reason for the continuance was not specified in the minutes, it is safe to assume that, because petitioner's new counsel had just enrolled, he needed time to familiarize himself with the case and to prepare for trial.  At the status hearing on April 9, 2009, defense counsel then requested and was granted a second continuance.[42]  The reason for the continuance was petitioner had not been transferred from the Louisiana State Penitentiary in Angola to the Jefferson Parish Correctional Center as ordered, thereby inhibiting counsel's ability to prepare for trial.[43]

Defense counsel obviously decided that the delays would be beneficial, and this Court has no sound basis to second-guess that determination.  Furthermore, a continuance "to gain time to complete necessary trial preparation" does not constitute an unreasonable act by counsel.  United States v. Webb, 796 F.2d 60, 63 (5th Cir. 1986); Brownlee v. Knipp, No. CV 12-0859, 2012 WL 6773361, at *33 (C.D. Cal. Nov. 5, 2012), adopted, 2013 WL 74705 (C.D. Cal. Jan. 4, 2013); Gibbs v. Koster, No. 4:12CV1714, 2015 WL 5157522, at *7-8 (E.D. Mo. Sept. 2, 2015) (holding that petitioner failed to demonstrate that his counsel's motions for continuances were unreasonable or that the results of the proceedings would have been different had counsel not requested the continuances); Jones v. Haws, No. CIV S-09-1735, 2011 WL 4479842, at *13 (E.D. Cal. Sept. 26, 2011) ("Here, Jones fails to demonstrate deficient performance by defense counsel Lauper.  The record reflects that Lauper, having been newly appointed, was forced to choose between obtaining a continuance over Jones's personal objection in order to properly prepare for trial, or, in the

---

[41] State Rec., Vol. 13 of 20, minute entry dated February 17, 2009.

[42] State Rec., Vol. 13 of 20, minute entry dated April 9, 2009.

[43] Id.  The Department of Corrections did not originally comply with the trial court's February 26, 2009 order to house petitioner at the Jefferson Parish Correctional Center.  State Rec., Vol. 13 of 20, order dated February 26, 2009.  On April 29, 2009, after the trial court ordered the Department of Corrections and the Warden to show cause why they should not be held in contempt for failing to abide by the order, petitioner was transferred to the Jefferson Parish Correctional Center.  State Rec., Vol. 13 of 20, Rule to Show Cause Why Warden Should Not be Held in Contempt for Failing to Abide by District Court's Order filed March 27, 2009; order dated April 15, 2009; minute entry dated May 4, 2009; Petition for a Writ of Habeas Corpus filed August 6, 2010.

alternative, proceeding to trial unprepared but within the statutory time period.  Lauper sought the

continuance for a valid reason and the decision did not constitute deficient performance.  To the

contrary, it may have constituted ineffective assistance for Lauper to proceed to trial inadequately

prepared to defend Jones."); Taylor v. Dormire, No. 4:06-CV-426, 2007 WL 1063534, at *5 (E.D.

Mo. Apr. 9, 2007) ("Moving for continuances in order to prepare for trial properly is not deficient

performance by counsel.").  Without more, petitioner has obviously failed to meet his burden of

proof with respect to this ineffective assistance claim.

      Furthermore, petitioner has not demonstrated any prejudice as a result of counsel's actions.

There is no evidence that his counsel was prepared to try the case when he was appointed on

February 17, 2009.  The delay of the trial therefore allowed counsel the necessary time to properly

prepare the defense by reviewing the discovery, consulting with petitioner, reviewing the earlier

proceedings, and filing necessary motions.  Had the delay not been sought and granted, the

alternative would have been for petitioner to proceed to trial with unprepared counsel.

      Petitioner's last claim of ineffective assistance is that his appellate counsel was ineffective

for failing to brief two issues on appeal.  Specifically, he claims his appellate counsel should have

asserted a claim that trial counsel was ineffective for seeking continuance of the trial.  He also

claims his appellate counsel should have challenged the trial court's denial of petitioner's *pro se*

motion to quash and writ of habeas corpus.

      With respect to such ineffective assistance of appellate counsel claims, it must be

remembered that counsel "is not obligated to urge on appeal every nonfrivolous issue that might

be raised (not even those requested by defendant)."  West v. Johnson, 92 F.3d 1385, 1396 (5th Cir.

1996).  Rather, "[e]xperienced advocates since time beyond memory have emphasized the

importance of winnowing out weaker arguments on appeal and focusing on one central issue if

possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753. As a result, the applicable test to be applied in assessing such a claim is whether the issue ignored by appellate counsel was "clearly stronger" than the issues actually presented on appeal. See, e.g., Diaz v. Quarterman, 228 F. App'x 417, 427 (5th Cir. 2007); accord Smith v. Robbins, 528 U.S. 259, 288 (2000).

In the instant case, appellate counsel raised three assignments of error on direct appeal: (1) the trial court erred in denying his motion for mistrial after the jury was shown petitioner's advice of rights form, which indicated that he was originally charged with first degree murder; (2) the trial court erred in allowing the state to introduce "other crimes" evidence; and (3) the trial court erred in allowing the state to read petitioner's personal letters even though they were never offered or intended to be introduced at trial. Although those three claims were ultimately unsuccessful, it can hardly be said that the two claims petitioner now proposes were "clearly stronger."

As to petitioner's contention that appellate counsel should have raised a claim that petitioner's trial counsel was ineffective for seeking continuance of the trial, that contention is clearly meritless. Louisiana law in fact *discourages* the assertion of ineffective assistance of claims on direct appeal. See, e.g., State v. Truitt, 500 So. 2d 355, 359 (La. 1987) ("The appropriate avenue for asserting a claim for ineffective assistance of counsel is through postconviction relief, not by direct appeal."). As a result, Louisiana state courts normally decline to consider such claims on direct appeal unless the record is sufficient to decide the issue without the need for an additional post-conviction hearing to obtain additional evidence. See, e.g., State v. Ratcliff, 416 So. 2d 528, 530 (La. 1982). Obviously, counsel performance is not deficient, and no prejudice results, where,

as here, appellate counsel's actions conform to such state court norms and his client does not lose the opportunity to have his claim addressed later at a more appropriate time.

As to petitioner's contention that appellate counsel was ineffective for failing to challenge the trial court's denial of the motion to quash and the writ of habeas corpus, that contention fares no better. The trial court's ruling *had already been challenged and upheld in pretrial supervisory writs.* On February 3, 2011, the Louisiana Fifth Circuit Court of Appeal found the trial court's ruling to be correct, holding:

> Relator, Allen Snyder, brings this writ application for review of the trial court's denial of his motion to quash the indictment for failure to timely prosecute.[FN4]  Snyder was originally indicted on September 19, 1995 for first degree murder.  He was tried and convicted of the charge and sentenced to death. However, the United States Supreme Court overturned that conviction and sentence in <u>Snyder v. Louisiana</u>, ___ U.S. ____, 228 S.Ct. 1203, 170 L.Ed.2d 175 (2008) rendered on April 30, 2008, and remanded the matter to the trial court for further proceedings.  Snyder was re-indicted on January 29, 2009 for second degree murder.

> > [FN 4]  This writ application was filed by defense counsel.  Relator has also filed a writ seeking review of the same ruling.  <u>State v. Snyder</u>, 11-K-14.

> Snyder entered a plea of not guilty on February 12, 2009 and a trial date was set for February 17, 2009.  For various reasons the new trial did not occur, and on August 6, 2010, Snyder filed a *pro se* motion to quash the indictment and a petition for writ of Habeas Corpus.  The State opposed the motion and after a hearing, the trial court denied the motion to quash.  That ruling is the subject of this writ application.

> La. C.Cr.P. art. 582 provides, that "(w)hen a defendant obtains a new trial or there is a mistrial, the state must commence the second trial within one year from the date the new trial is granted, or the mistrial is ordered, or within the period established by Article 578[FN 5], which ever is longer."  The prescriptive period set forth in the above article commences to run when the court's judgment becomes final.[FN 6]  La. C.Cr.P. art. 922 provides that a judgment rendered by the Supreme Court becomes final when the delay for applying for a rehearing (14 days) has expired.

> > [FN 5]  La. C.Cr.P. art. 578 allows two years from the date of the institution of the prosecution.
> > [FN 6] <u>State v. Brown</u>, 451 So.2d 1074 (La. 1984).

Therefore, the State had one year and 14 days from April 30, 2008, or until May 14, 2009 to commence the new trial.

Pursuant to La. C.Cr.P. art. 580 the time limitation is suspended when a defendant filed a motion to quash or another preliminary plea until a ruling on that motion. However, article 580 also provides that "in no case shall the state have less than one year after the ruling to commence the trial."

Relator concedes that he filed a motion to continue for the purpose of enrollment of new counsel on February 17, 2009 and also asked for a status date. That motion was granted by the trial court. Relator also states that he filed a motion for continuance on April 9, 2009.

Relator contends that those two defense motions to continue trial did not suspend the time limitation since those motions were granted the same day they were made. We disagree.

Pursuant to La. C.Cr.P. art. 580, the prescriptive period was suspended when relator filed the motion for continuance of trial to enroll new counsel on February 17, 2009, giving the State one year after the ruling thereon made that same date or until February 17, 2010 to commence trial.

On June 11, 2009, within the extended limitations period, relator filed omnibus motions to suppress evidence, statements, and identifications. Those motions were also preliminary plea that suspended the prescription period until March 8, 2010, when they were denied. On March 4, 2010, relator filed a motion to quash which suspended the prescription period until the trial judge denied it on May 27, 2010, thereby giving the State until May 27, 2011 to commence trial.

On July 23, 2010, within the extended limitations period, relator filed an application for supervisory writs in this Court seeking review of the trial judge's granting of the <u>Prieur</u> motion, which suspended the prescription period until August 20, 2010, when this Court denied relator's application. Thus, the State would have had until August 20, 2011, one year from the date of the ruling, in which to commence trial. Relator filed a writ application with the Louisiana Supreme Court challenging this Court's ruling. On November 19, 2010, the Supreme Court denied writs, which would give the State until November 11, 2011, to commence trial.

On August 6, 2010, relator filed a petition for writ of habeas corpus and another motion to quash (that form the basis of the instant writ application), that suspended the prescription period until the trial judge denied it. Relator filed the instant writ applications which will suspend the prescription period until this Court rules on them, thereby giving the State one year from the date of this Court's ruling to commence trial.

Accordingly, we find no error in the trial court's decision to deny the motion to quash.[44]

---

[44] <u>State v. Snyder</u>, No. 11-K-23 (La. App. Feb. 3, 2011); State Rec., Vol. 13 of 20. On that same date, the Court of Appeal likewise denied the <i>pro se</i> writ application referenced in footnote 4 of the opinion. <u>State v. Snyder</u>, No. 11-K-14 (La. App. 5th Cir. Feb. 3, 2011) ("For reasons set forth in a related writ application, <u>State of Louisiana v. Allen Snyder</u>, 11-K-23, we find no error in the trial court's decision to deny relator's motion to quash the indictment for untimely prosecution.").

On May 20, 2011, the Louisiana Supreme Court then likewise denied the related writ application without assigning additional reasons.[45]

While it is true that the denial of such pretrial writs does not *preclude* a defendant from raising the same issue in a subsequent direct appeal, such repetitive challenges face daunting obstacles and, therefore, rarely succeed.  As the Louisiana Fourth Circuit Court of Appeal noted in a case in which a defendant similarly attempted to relitigate the denial of pretrial writs challenging a motion to quash:

> Both this court and the Louisiana Supreme Court denied [defendant's] writ application seeking review of the district court's ruling denying his motion to quash.  Under the law of the case doctrine, appellate courts generally decline to reconsider their own rulings of law on a subsequent appeal in the same case.  State v. Duncan, 11-0563, p. 26 (La.App. 4 Cir. 5/2/12), 91 So.3d 504, 520 (citing Pitre v. Louisiana Tech University, 95-1466, p. 7 (La. 5/10/96), 673 So.2d 585, 589).  The law of the case doctrine applies to all prior rulings or decisions of an appellate court or the Supreme Court in the same case, not only those arising from an appeal.  Duncan, *supra* (citing State v. Molineux, 11-0275, p. 3 (La.App. 4 Cir. 10/19/11), 76 So.3d 617, 619).
>
> Applying the law of the case doctrine, an appellate court will not reverse its pretrial decision unless the defendant presents new evidence tending to show that the pretrial decision was patently erroneous and produced an unjust result.  Duncan, *supra* (citing State v. Gillet, 99-2474, p. 5 (La.App. 4 Cir. 5/10/00), 763 So.2d 725, 728).  Although a different decision on appeal is not absolutely precluded, judicial efficiency demands that great deference be accorded to the earlier decision.  Id.
>
> Here, [defendant] failed to present any new evidence bearing on the correctness of this court's prior decision denying his pre-trial writ application seeking review of the district court's denial of his motion to quash.  State v. Lewis, 15-0021, (La. App. 4 Cir. 3/5/15) (unpub.).  Thus, [defendant] has failed to show that this court should not follow the law of the case doctrine and decline to exercise its discretion to reconsider its prior ruling on this issue.
>
> Regardless, turning to the merits of the motion to quash, we reach the same result.  A trial court's ruling on a motion to quash is discretionary and should not be disturbed by an appellate court absent a clear abuse of discretion.  State v. Love, 00-3347, pp. 9-10 (La. 5/23/03), 847 So.2d 1198, 1206 ("[b]ecause the complementary role of trial courts and appellate courts demands that deference be given to a trial court's discretionary decision, an appellate court is allowed to reverse a trial court judgment on a motion to quash only if that finding represents an abuse of the trial court's discretion.").  See also State v. Sorden, 09-1416, p. 3 (La.App. 4 Cir. 8/4/10), 45 So.3d 181, 183; State v. Kitchens, 09-0834, 09-0836, p.

---

[45] State v. Snyder, 63 So. 3d 976 (La. 2011); State Rec., Vol. 13 of 20.

4 (La.App. 4 Cir. 3/24/10), 35 So.3d 404, 406; <u>State v. Ramirez</u>, 07-0652, p. 4 (La.App. 4 Cir. 1/9/08), 976 So.2d 204, 207.  As the Supreme Court explained in <u>Love</u>, "[w]hen a trial judge exercises his discretion to deny a motion to quash, he presumably acts appropriately, based on his appreciation of the statutory and procedural rules giving him the right to run his court."  00-3347 at p. 12, 847 So.2d at 1208.

<u>State v. Lewis</u>, 209 So. 3d 202, 209-10 (La. App. 4th Cir. 2016) (footnote omitted).

Here, the instant petitioner likewise points to no "new evidence tending to show that the pretrial decision was patently erroneous and produced an unjust result."  Accordingly, considering the deference that must be accorded to both the trial court's discretionary decision and the rulings of the Court of Appeal and the Louisiana Supreme Court on the pretrial writ applications, there is no reason to believe that this claim, even if it had been reasserted on direct appeal, had any reasonable likelihood of success.[46]

For all of these reasons, it is clear that petitioner has not demonstrated that either his trial or appellate counsel performed deficiently or any resulting prejudice.  Accordingly, petitioner's claims should be denied.

---

[46] In his federal application, petitioner also opines that trial counsel's oral motion for a continuance was not valid.  It is unclear whether those references are intended merely as further support for his contention that his motion to quash should have been granted or whether they are instead intended as a separate and distinct claim appellate counsel should have asserted on appeal.

If he intended the former, it must be noted that the contention does not in fact support his claim regarding the motion to quash.  Under Louisiana law, an oral motion for continuance suspends the limitations period.  <u>State v. Watts</u>, 738 So. 2d 628, 630 (La. App. 5th Cir. 1999) ("[W]hether the writing requirement was followed in this case has no bearing on the end result – continuances were granted for defendant and suspension periods therefore exist."); <u>State v. Jones</u>, 620 So. 2d 341, 343 (La. App. 5th Cir. 1993) (holding that an oral continuance by defense suspended the prescriptive period set forth in article 578); <u>State v. Brujic</u>, No. 2009 KA 0719, 2009 WL 3452893, at *4 (La. App. 1st Cir. Oct. 23, 2009) (citing cases); <u>State v. Lathan</u>, 953 So. 2d 890, 895 (La. App. 2d Cir. 2007).

If he intended the latter, then the Court notes that a separate claim on that basis would also lack merit and, therefore, is not "clearly stronger" than the claims asserted by appellate counsel.  It is true that motions for a continuance are generally required to be in writing and filed seven days prior to the commencement of trial.  La. Code Crim. P. art. 707.  However, there is an exception to that requirement whenever the grounds for the continuance arise unexpectedly.  <u>State v. Washington</u>, 407 So. 2d 1138, 1148 (La.1981); <u>State v. Shannon</u>, 61 So. 3d 706, 714 (La. App. 5th Cir. 2011).  In this case, petitioner's original defense counsel was allowed to withdraw, and his new counsel was not enrolled until February 17, 2009, the same day the trial was set to begin.  Thus, it would not have been possible for new counsel to comply with article 707.

## <u>RECOMMENDATION</u>

It is therefore **RECOMMENDED** that the federal application seeking habeas corpus relief filed by Allen Snyder be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[47]

New Orleans, Louisiana, this sixth day of September, 2018.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[47] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.