**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ALLEN SNYDER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-7071** |
| **DARREL VANNOY, WARDEN** | **SECTION: "B"(1)** |

## ORDER AND REASONS

Before the Court are the Magistrate Judge's Report and Recommendation to Dismiss Petitioner Allen Snyder's Request for Habeas Corpus Relief (Rec. Doc. 13) and Petitioner's Objections to the Report and Recommendation (Rec. Doc. 14). Accordingly,

**IT IS ORDERED** that Petitioner's Objections are **OVERRULED** and the Report and Recommendation are **ADOPTED** as the Court's Opinion, **dismissing** the captioned Section 2254 action for relief.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner Allen Snyder is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. *See* Rec. Doc. 13 at 1. In 1996, petitioner was originally convicted by a twelve-member jury of first degree murder and subsequently sentenced to death. *See State v. Snyder*, 128 So. 3d 370, 372 (5th Cir. 2013). However, in 2008, the United States Supreme Court

1

reversed the judgment and remanded the matter after finding a *Batson* violation.[1] *See Snyder v. Louisiana*, 552 U.S. 472 (2008).

On January 29, 2009, a grand jury indicted petitioner for second-degree murder. *See State v. Snyder*, 128 So. 3d 370, 372 (5th Cir. 2013). The State also filed notices of intent to use evidence of other crimes. *See id*. On May 4, 2010, a *Prieur* hearing[2] was held, and on May 27, 2010, the motion was granted. *See id*. Petitioner was denied review of that ruling and trial began in 2012. *See id*. At trial, the jury heard testimony from defendant and his ex-wife as well as saw medical records that were introduced into evidence. *See id.* at 373-75. Testimony and evidence showed that petitioner and his ex-wife had a troubled marriage in which petitioner was jealous and controlling. *See id*. at 373. According

---

[1] On August 29, 1996, petitioner was convicted of first degree murder. On August 22, 1997, petitioner was sentenced to death. On April 14, 1999, the Louisiana Supreme Court conditionally affirmed the conviction and sentence but remanded the matter to the lower court for an inquiry into petitioner's competence at the time of trial. After determining that Petitioner was in fact competent at the time of trial, the state Supreme Court affirmed the conviction and sentence. In June 2005, the United States Supreme Court granted petitioner's petition for a writ of certiorari, vacated the judgment and remanded the case to the Louisiana State Supreme Court for consideration of petitioner's Batson claim. On remand, the state Supreme Court found no merit in petitioner's claims and again affirmed his conviction and sentence. Nevertheless, on March 19, 2008, the United States Supreme Court reversed the judgment and remanded the matter after finding that the trial court committed error in rejecting Petitioner's claim that the prosecution exercised peremptory challenge based on race in violation of *Batson*. On April 30, 2008, the Louisiana Supreme Court set aside the conviction and sentence and remanded the matter. *See* Rec. Doc. 13 at 1-2.

[2] A *Prieur* hearing requires that before evidence of other crimes are introduced, the trial court must determine that the extraneous acts are probative of a real issue and that their probative value exceeds their prejudicial effect. The party seeking to introduce such evidence must show the requisite for it at a hearing outside the presence of the jury. *See State v. Taylor*, 217 So. 3d 283, 291 (La. 2016).

to the evidence, the jealousy escalated to physical abuse[3] causing the ex-wife to eventually move out. *See id*. However, in 1995, Petitioner wanted to reconcile with his ex-wife. *See id.* Nevertheless, petitioner found his ex-wife with another man, the victim, and eventually engaged in an altercation in which petitioner stabbed the victim nine times and his ex-wife 19 times. *See id.* at 374-75.

On February 2, 2012, the jury found petitioner guilty as charged. Petitioner was sentenced to life imprisonment. *See id.* at 373. The Court of Appeals affirmed petitioner's conviction and sentence. The Louisiana Supreme Court denied his related writ application. *See id.* at 383; *State v. Snyder*, 138 So. 3d 643 (La. 2014). Petitioner unsuccessfully sought post-conviction relief in the state courts. *See* Rec. Doc. 13.

On July 24, 2017, petitioner filed the instant federal habeas corpus application alleging that he received ineffective assistance of counsel at both the trial and appellate levels. *See* Rec. Doc. Nos. 1, 3. On November 3, 2017, respondents filed a response in opposition to the habeas petition arguing that the petitioner's claims were procedurally barred. *See* Rec. Doc. 11. On November 13, 2017, Petitioner filed a reply. *See* Rec. Doc. 12. On

---

[3] According to the record, petitioner shoved his ex-wife's head into the car window, struck her with a baseball bat while she was sleeping, drove her to an isolated location, opened his trunk, and threatened her, slammed her head into the wall causing serious injuries, and stabbed her nine times in the neck, head, and arms. *See State v. Snyder*, 128 So. 3d 370 (5th Cir. 2013).

September 7, 2018, the Magistrate Judge reviewed the petition and recommended it be dismissed with prejudice. *See* Rec. Doc. 13. On September 18, 2018, Petitioner filed his objections to the Report and Recommendation. *See* Rec. Doc. 14.

### A. **28 U.S.C. § 2254- General Principals**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls review of this 28 U.S.C. § 2254 habeas corpus petition. *See Poree v. Collins*, 866 F.3d 235, 245 (5th Cir. 2017) ("Federal habeas proceedings are subject to the rules prescribed by the Antiterrorism and Effective Death Penalty Act . . . ."). Under § 2254, an application for a writ of habeas corpus may be denied on the merits, even if an applicant has failed to exhaust state court remedies. *See* 28 U.S.C. § 2254(b)(2); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998). Enacted as part of the AEDPA, the amended subsections 2254(d)(1) and (2) provide the standards of review for questions of fact, questions of law, and mixed questions of both.

For pure questions of fact, factual findings are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus . . . a determination of a factual issue made by a State court shall be presumed to be correct."). The applicant has the burden of rebutting the presumption by clear and convincing evidence. *See id*. However, a writ of habeas corpus may be granted if the adjudication of the

4

claim on the merits "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *Hankton v. Boutte,* 2018 U.S. Dist. LEXIS 126899 *1, *10 (E.D. La June 29, 2018).

For pure questions of law and mixed questions of law and fact, a state court's determination is reviewed under § 2254(d)(1). *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). For mixed questions, a state court's determination receives deference unless the decision was either contrary to federal law or involved an unreasonable application of federal law. *See* § 2254(d)(1); *Hill*, 210 F.3d at 485.

A state court's decision is contrary to federal law if (1) the state court applies a rule different from the governing law set forth in the Supreme Court's cases or (2) the state court decides a case differently than the Supreme Court when there are "materially indistinguishable facts." *See Poree,* 866 F.3d at 246; *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010). A state court's decision involves an unreasonable application of federal law when it applies a correct legal rule unreasonably to the facts of the case. *See White v. Woodall*, 134 S. Ct. 1697, 1706 (2014). An inquiry under the unreasonable context involves not whether the state court's determination was incorrect, but whether the

5

determination was objectively unreasonable. *Boyer v. Vannoy*, 863 F.3d 428, 454 (5th Cir. 2017).

The court in *Boyer* stated that the determination must not be "merely wrong," and that "clear error" will not be enough to overturn a state court's determination. *Id; see also Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) (finding that unreasonable is not the same as incorrect, and thus an incorrect application of the law will be affirmed if it is not also unreasonable). Even if a state court incorrectly applies Supreme Court precedent, that mistake alone, does not mean that a petitioner is entitled to habeas relief. *See Puckett*, 641 F.3d at 663.

### B. <u>Ineffective Assistance of Counsel</u>

A petitioner seeking relief for ineffective counsel must show that counsel's performance was deficient <u>and</u> the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984). Petitioner bears the burden of proof and must prove by a preponderance of evidence that his counsel was ineffective. *See Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997); *Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). A court is not required to address both prongs of the test if the court finds that the petitioner has not sufficiently proven one of the two prongs. *See Strickland*, 466 U.S. at 697. In other words, a court may dispose of the claim without addressing the other prong.

6

To prove deficient performance, the petitioner must show that defense counsel's representation "fell below an objective standard of reasonableness." *See United States v. Bolton*, 908 F.3d 75, 99 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 688). The Fifth Circuit has repeatedly held that courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Halprin v. Davis*, 911 F.3d 247, 258 (5th Cir. 2018); *Lucio v. Davis*, 2018 U.S. App. LEXIS 29213 *12 (5th Cir. Oct. 17, 2018); *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986). The petitioner must overcome this presumption as the courts take into account the reasonableness of counsel's conduct under all of the circumstances. *See Strickland*, 466 U.S. at 689; *Lucio*, 2018 U.S. App. LEXIS 29213 at *12-13.

To show prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Avila-Gonzales*, 2018 U.S. App. LEXIS 35950 *3-4 (5th Cir. Dec. 20, 2018) (citing *Strickland*, 466 U.S. at 694). Therefore, the petitioner must be able to demonstrate that the outcome would have been different. *See id*. "The likelihood of a different result must be substantial, not just conceivable." *Mejia v. Davis*, 906 F.3d 307, 320 (5th Cir. 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

Petitioner alleges five claims regarding alleged ineffective assistance of counsel at both the trial and appellate levels. For the reasons discussed below, petitioner's claims are without merit.

First, petitioner claims his counsel was ineffective for not making a *Batson* challenge due to gender bias at the trial. Specifically, petitioner argues that the "trial was infected with a severe case of gender bias" because the jury consisted of nine females and three males, "thus rendering his trial fundamentally unfair." Rec. Doc. 14 at 4. However, as the Magistrate Judge found, this argument lacks merit.

A *Batson* violation occurs when there is the use of peremptory strikes of prospective jurors to purposefully discriminate against one due to race or gender. *See Batson v. Kentucky*, 476 U.S. 79 (1986); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994) (extending *Batson* to include gender discrimination). Among the different steps required of a petitioner to make, the petitioner must show a prima facie showing that a peremptory challenge has been exercised on the basis of gender. *See Sparkman v. Vannoy*, 2017 U.S. Dist. LEXIS 222324 *50 (E.D. La. Dec. 1, 2017) (citing *Stevens v. Epps*, 618 F.3d 489, 492 (5th Cir. 2010)).

Petitioner has not made out a prima facie case of gender discrimination. The State used only three peremptory challenges, one striking a male and two striking females. *See* Rec. Doc. 13 at

14. While petitioner urges the number of peremptory challenges used by the State is "irrelevant," (*See* Rec. Doc. 14 at 4), the fact that the State only used one to strike a male is not inherently suspect. Petitioner's claim is conclusory and nothing in the record supports a finding that a juror was improperly struck under *Batson*.

Second, petitioner argues that counsel's cross-examination of Mary Beth Snyder was deficient. However, courts have stated that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." *Lyons v. Vannoy*, 2018 U.S. Dist. LEXIS 99137 *66 (E.D. La. May 11, 2018) (quoting *Ford v. Cockrell*, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), *aff'd*, 135 F. App'x 769 (5th Cir. 2005)). In addition, the Supreme Court has warned courts in second-guessing the decisions of counsel. *See Strickland*, 466 U.S. at 689. Specifically, the Supreme Court has stated that courts should not second-guess counsel's decisions through hindsight, but instead look at counsel's perspective at the time. *Id*. Thus, courts are to give a strong presumption that counsel's performance was reasonable and might be "sound trial strategy." *Id*.

In *Lyons*, the court found that the petitioner's claims were meritless as the petitioner failed to show what necessary questions went unasked and how he was prejudiced by such. *Lyons*, 2018 U.S. Dist. LEXIS 99137 *67. On the contrary, the court found that the

petitioner's defense counsel "vigorously and exhaustively cross examined" the witnesses. *Lyons*, 2018 U.S. Dist. LEXIS 99137 *67–68.

Here, petitioner fails to establish that counsel's performance was deficient in the cross examination of the witness. He asserts that defense counsel cross-examined Mary Beth Snyder, but that the "cross examination . . . was simply about her trial testimony that contradicted information that she had provided to Snyder and others." Rec. Doc. 1 at 6. While Petitioner attempts to assert that counsel did not vigorously cross examine Mary Beth Snyder, he fails to show or identify any relevant questions that counsel failed to ask on cross-examination. In addition, petitioner discusses how Mary Beth Snyder should have been impeached due to inconsistencies in her testimonies, and that counsel had a "duty to impeach" her. *Id*. However, not only does petitioner concedes that defense counsel did in fact cross examine the witness on her inconsistencies, but the record also shows that defense counsel attempted to use transcripts in order to challenge the witness's credibility. *See id.;* Rec. Doc. 13 at 16. Furthermore, as the court found in *Lyon*, this Court finds that defense counsel vigorously cross-examined the witness. We also recognize the Supreme Court's warning against second-guessing counsel's tactical decisions unless petitioner can overcome the strong presumption. Therefore,

Petitioner has not shown how such attempts to cross-examine Mary Beth Snyder were deficient nor how Petitioner was prejudiced.

Third, petitioner argues that counsel was ineffective for failing to object to Gwendolyn Williams's testimony from the first trial being read into the record at his second trial. In objections to the report and recommendation, he argues that the testimony should have been barred. However, petitioner fails to show or establish how his trial counsel neglected to object to the admission of Gwendolyn Williams's testimony from the first trial. On the contrary, the record shows that counsel objected vigorously to the use of the evidence at the hearing and renewed those objections at trial. As the Magistrate Judge discussed, "the mere fact that the challenge to the testimony was unsuccessful is not evidence that counsel performed deficiently." Rec. Doc. 13 at 18.

Fourth, petitioner contends that trial counsel was ineffective for requesting unnecessary and oral continuances. According to petitioner, the "case was not benefited from the granting of any continuances." Rec. Doc. 14 at 6. However, the court in *Farrier v. Vannoy* stated that the decision to either seek a continuance or not is one of trial strategy that should be given great deference, 2018 U.S. Dist. LEXIS 214803 *20 (E.D. La. May 25, 2018).

In the instant case, petitioner's indictment was amended to charge him with second degree murder. Petitioner's counsel from the Louisiana Capital Assistance project withdrew counsel when Petitioner no longer became charged with a capital offense. On the same day that trial was scheduled, new counsel enrolled for petitioner and requested a continuance. Thus, as the Magistrate Judge assumes, a continuance was requested to prepare for trial as counsel had just enrolled. A second continuance was requested when Petitioner was not transferred to the Jefferson Parish Correctional Center as ordered by the court.

While petitioner asserts that these continuances did not benefit his case, he does not show how the requests for continuance were unreasonable. *See United States v. Webb*, 796 F.2d 60, 63 (5th Cir. 1986) (finding that a continuance to gain time to complete necessary trial preparation does not equal an unreasonable act by counsel). Petitioner fails to show how the results of his proceeding would have been different if counsel had not requested the continuances. There is no showing that counsel was prepared to try the case on the same day that counsel was appointed for petitioner. *See* Rec. Doc. 13 at 20. Thus, the additional time gave counsel the necessary time to adequately prepare petitioner's defense.

Lastly, petitioner claims that appellate counsel was ineffective for failing to argue certain issues on appeal.

According to petitioner, appellate counsel should have asserted a claim that trial counsel was ineffective for requesting continuance of the trial. However, the courts have previously held that appellate counsel is not required to bring forth every non-frivolous claim that might be raised. *See Matthews v. Cain*, 337 F. Supp. 3d 687, 712 (E.D. La. 2018); *West v. Johnson*, 92 F.3d 1385, 1396 (5th Cir. 1996)

The court in *Matthews* reiterated the viewpoint that it is important for experienced lawyers to not focus so much on the weaker arguments on appeal but instead focus on either one central issue or a few important ones. The court held that such strategy could be beneficial in that focusing on every issue, especially those that lack merit, could potentially undermine or bury good arguments. *Matthews*, 337 F. Supp. at 712. "Rather, the applicable test to be applied in assessing such a claim is instead whether the issue ignored by appellate counsel was 'clearly stronger' than the issues actually presented on appeal." *Id*. (citing *Diaz v. Quarterman*, 228 Fed. App'x 417, 427 (5th Cir. 2007)).

Petitioner's appellate counsel raised three arguments on appeal concerning the trial court's denial of the motion for mistrial, the allowance of petitioner's other crimes, and the allowance of the State to view personal letters that were never offered at trial. While appellate counsel was unsuccessful in his arguments, the petitioner fails to establish how the

claim that

trial counsel was ineffective for requesting continuances is stronger than those actually presented on appeal. As seen earlier, the continuances had reasonable grounds.

For the reasons stated above, petitioner has not shown that either trial or appellate counsel was deficient in performance nor that he was prejudiced by either counsel's performances.

New Orleans, Louisiana this 18th day of April, 2019.

_____
SENIOR UNITED STATES DISTRICT JUDGE